UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| In Re: SHAWNI MOSHIRI ) | |
| ) | |
| BROADWAY TIFFANY, LLC ) | |
| and TONY FAHAM, ) | Bankruptcy No.: 14-27900 |
| ) | |
| Adversary Plaintiffs, ) | Adversary Proceeding No.: |
| ) | |
| v. ) | Judge Jack Schmetterer |
| ) | |
| SHAWNI MOSHIRI, ) | |
| ) | |
| Adversary Defendant. ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT
OBJECTING TO THE DISCHARGE OF A PARTICULAR
DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(a)**

The Adversary Plaintiffs BROADWAY TIFFANY, LLC (hereinafter referred to as "BROADWAY") and TONY FAHAM (hereinafter referred to as "FAHAM") and for their adversary complaint against the Adversary Defendant, SHAWNI MOSHIRI (hereinafter referred to as "MOSHIRI"), state:

**FALSE PRETENSES, FALSE REPRESENTATIONS,
OR ACTUAL FRAUD 11 U.S.C. § 523(a)(2)(a)**

1. This adversary proceeding for declaratory judgment relates to the bankruptcy case in re: *Shawni Moshiri,* case number 14-27900, Chapter 7 of the United States Bankruptcy Code, pending in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division.

2. BROADWAY and FAHAM are creditors of MOSHIRI in this bankruptcy case.

3. This adversary proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I) and (J) in that it seeks a declaratory judgment for the determination of the dischargability of a particular debt.

4. This Court has jurisdiction under 28 U.S.C. §§ 1334 and 2201(a).

5. At all times relevant hereto, BROADWAY was a limited liability company organized on or about April 12, 2005 to acquire, invest in, develop, construct, market, sell, lease and manage real estate.

6. At all times relevant hereto, BROADWAY's members were FAHAM, MOSHIRI, and Dennis Nardoni. Each of the members held a 33% interest in BROADWAY.

7. Upon the organization of BROADAY, each of the Members anticipated and intended that BROADWAY would participate with another entity in acquiring, investing in, and developing real property at or around 5204-5246 N. Broadway, Chicago, Illinois.

8. To that end, each of the Members pledged an initial capital contribution of $100,000.00.

9. Further, each of the Members agreed that, in order for BROADWAY to participate with another entity in acquiring, investing in and developing the Broadway Street property, the following obligations would be imminent: (1) BROADWAY would be required to procure a loan from Midwest Bank and Trust Company ("Midwest Bank") in the amount of not more than $2,000,000.00; (2) each of the Members would be required to make additional capital contributions from time to time as deemed by the majority of the Members to be reasonably necessary to meet the expenses and obligations of BROADWAY in acquiring and developing the Broadway Street property; and (3) each of the Members would be obligated to personally guaranty the loan from Midwest Bank to BROADWAY.

10. In order to meet these obligations, on April 12, 2005, the Members entered into an operating agreement for BROADWAY. A true and correct copy of this agreement is attached hereto as **Exhibit A**.

11. Pursuant to Section 8.02 of the operating agreement, a Member was required to make such additional capital contributions as shall be determined by the Members owning the majority of the interest from time to time to be reasonably necessary to meet the expenses and obligations of BROADWAY (**Exhibit A**, par. 8.02).

12. At the time that MOSHIRI entered into the operating agreement for BROADWAY, he knew that he would not pay his respective contribution in order to meet the expenses and obligations of BROADWAY.

13. Notwithstanding this knowledge and intent, MOSHIRI repeatedly told FAHAM and Nardoni that he clearly intended to pay his proportionate share of the contributions in order to acquire and develop the Broadway Street property. Moreover, he told both Nardoni and FAHAM to advance the monies for him and that he would promptly pay them back.

14. On or about April 25, 2005, BROADWAY procured from Midwest Bank a loan in the principal amount of $1,700,000.00, the purpose of which was to assist in the purchase, financing and development of Broadway Street property. A true and correct copy of the loan agreement is attached hereto as **Exhibit B**.

15. Based on MOSHIRI's repeated misrepresentations, FAHAM and Nardoni collectively paid over $574,862.31 to Midwest Bank.

16. In May, 2007, FAHAM requested that MOSHIRI pay his proportionate share of the loan. At that time, MOSHIRI advised FAHAM that he should pay his share and he would promptly pay him back. Based on MOSHIRI's representation, FAHAM and Nardoni paid MOSHIRI's share.

17.     Thereafter, in August, 2007, FAHAM requested that MOSHIRI pay his representative share of the money owed. At that time, MOSHIRI indicated that he will forward payment, but requested that FAHAM advance the funds and he would promptly pay him back. Based on MOSHIRI's representation, FAHAM and Nardoni paid MOSHIRI's share.

18.     Between August, 2007 and August, 2008, FAHAM made repeated requests to MOSHIRI to pay his representative share of the loan. On each occasion, MOSHIRI indicated that he had either sent a check to FAHAM or he was going to pay his share and that FAHAM should continue to pay the monies and he would promptly pay him back.  Once again, based on MOSHIRIs assurances, FAHAM and Nardoni paid MOSHIRI's share of the property.

19.     On or about October 17, 2008, BROADWAY sent notification to MOSHIRI requesting his pro-rata share of all additional capital contributions to BROADWAY no later than November 13, 2008. A true and correct copy of that notification is attached as **Exhibit C**.

20.     MOSHIRI knew, however, that at the time that he made these comments to FAHAM, they were false since he never intended to make any payments under the loan agreement.

21.     MOSHIRI made these misrepresentations with an intent to deceive FAHAM and Nardoni since he had no intent on paying them for his share of the payments made to Midwest Bank.

22.     As a direct and proximate result of MOSHIRI's misrepresentations, FAHAM and Nardoni continued to make payments to the bank of over $500,000.00.

23.     As a direct and proximate result of MOSHIRI's fraudulent misrepresentations, BROADWAY and FAHAM have been damaged in an amount of at least $191,620.77.

4

WHEREFORE, the Adversary Plaintiffs, BROADWAY TIFFANY, LLC and TONY FAHAM, respectfully request that this Court enter a declaration that MOSHIRI's debt to them is not dischargable in bankruptcy, that the automatic stay be lifted to allow BROADWAY and FAHAM to collect the monies owed them by MOSHIRI, and for an award of attorney's fees and costs and such other relief as this Court may deem appropriate.

        Respectfully submitted,

          s/Joel F. Handler
        JOEL F. HANDLER (#1115812)
        One E. Wacker Drive, Suite 510
        Chicago, Illinois 60601
        (312) 832-0008

        Attorney for the Adversary Plaintiffs,
        BROADWAY TIFFANY, LLC
        and TONY FAHAM