# EXHIBIT A

# OPERATING AGREEMENT

## FOR

# BROADWAY TIFFANY, LLC,

an Illinois Limited Liability Corporation

April 12, 2005



MOSHIRI
DEPOSITION
EXHIBIT

# TABLE OF CONTENTS

ARTICLE I    DEFINITIONS

ARTICLE II    FORMATION OF COMPANY

2.01 Formation
2.02 Name
2.03 Principal Place of Business
2.04 Registered Office and Registered Agent
2.05 Term

ARTICLE III    BUSINESS OF COMPANY

ARTICLE IV    NAMES AND ADDRESSES OF MEMBERS

ARTICLE V    RIGHTS AND DUTIES OF MANAGERS

5.01 Management
5.02 Number, Tenure and Qualifications
5.03 Certain Powers of Managers
5.04 Liability for Certain Acts
5.05 Managers Have No Exclusive Duty to Company
5.06 Bank Accounts
5.07 Indemnity of the Managers, Employees and Other Agents
5.08 Resignation
5.09 Removal
5.10 Vacancies
5.11 Salaries

ARTICLE VI    RIGHTS AND OBLIGATIONS OF MEMBERS

6.01 Limitation of Liability
6.02 Company Debt Liability
6.03 List of Members
6.04 Approval of Sale of All Assets
6.05 Company Books
6.06 Priority and Return of Capital
6.07 Liability of a Member to the Company

ARTICLE VII    MEETINGS OF MEMBERS

7.01 Meetings
7.02 Place of Meetings
7.03 Notice of Meeting
7.04 Meeting of All Members
7.05 Record Date
7.06 Quorum

7.07 Manner of Acting
7.08 Proxies
7.09 Action by Members Without a Meeting
7.10 Waiver of Notice

ARTICLE VIII   CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS

8.01 Members' Capital Contributions
8.02 Additional Contributions
8.03 Capital Accounts
8.04 Withdrawal or Reduction of Members' Contributions to Capital
8.05 Collateral Security and Guaranties of Company Loans

ARTICLE IX   ALLOCATIONS, INCOME TAX, DISTRIBUTIONS, ELECTIONS AND REPORTS

9.01 Allocations of Profits and Losses from Operations
9.02 Special Allocations to Capital Accounts
9.03 Distributions
9.04 Limitation upon Distributions
9.05 Accounting Principles
9.06 Interest on and Return of Capital Contributions
9.07 Loans to Company
9.08 Accounting Period
9.09 Records, Audits and Reports
9.10 Returns and Other Elections
9.11 Tax Matters Partner

ARTICLE X   TRANSFERABILITY

10.01 General
10.02 Right of First Refusal
10.03 Transferee Not Member in Absence of Unanimous Consent

ARTICLE XI   ADDITIONAL MEMBERS

ARTICLE XII   DISSOLUTION AND TERMINATION

12.01 Dissolution
12.02 Winding Up, Liquidation and Distribution of Assets
12.03 Articles of Dissolution
12.04 Effect of Filing of Articles of Dissolution
12.05 Return of Contribution Nonrecourse to Other Members

ARTICLE XIII   MISCELLANEOUS PROVISIONS

13.01 Notices
13.02 Books of Account and Records
13.03 Application of Illinois Law

13.04  Waiver of Action for Partition
13.05  Amendments
13.06  Execution of Additional Instruments
13.07  Construction
13.08  Headings
13.09  Waivers
13.10  Rights and Remedies Cumulative
13.11  Severability
13.12  Heirs, Successors and Assigns
13.13  Creditors
13.14  Counterparts

EXHIBITS

A       Schedule of Members, Capital Contributions and Percentage Interests

THIS OPERATING AGREEMENT is made and entered into this 12th day of April, 2005, by and between the Members, DENNIS F. NARDONI, TONY FAHAM, and SHAWNI MOSHIRI, whose signatures appear on the signature page hereof.

WITNESSETH:

WHEREAS, the Organizer(s) have filed Articles of Organization for Broadway Tiffany, LLC with the Secretary of State of Illinois on April 12, 2005.

NOW, THEREFORE, the parties agree as follows:

ARTICLE I

DEFINITIONS

The following terms used in this Operating Agreement shall have the following meanings:

(a) "Act" shall mean the Illinois Limited Liability Company Act at 805 ILCS 180/9-9, et seq.

(b) "Articles of Organization" shall mean the Articles of Organization of Broadway Tiffany, LLC as filed with the Secretary of State of Illinois, as amended from time to time.

(e) "Capital Account" as of any given date shall mean the Capital Contribution to the Company by a Member as adjusted up to such date pursuant to Article VIII.

(d) "Capital Contribution" shall mean any contribution to the capital of the Company in cash or property by a Member whenever made. "Initial Capital Contribution" shall mean the initial contribution to the capital of the Company pursuant to this Operating Agreement.

(e) "Code" shall mean the Internal Revenue Code of 1986 or corresponding provisions of subsequent superseding federal revenue laws.

(f) "Company" shall refer to Broadway Tiffany, LLC.

(g) "Deficit Capital Account" shall mean with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the taxable year, after giving effect to the following adjustments:

(i) credit to such Capital Account any amount which such Member is obligated to restore under Section 1.704-1(b)(2)(ii)(c) of the Treasury Regulations, as well as any addition thereto pursuant to the next to last sentence of Sections 1.704-2(g)(1) and (i)(5) of the Treasury Regulations, after taking into account thereunder any changes during such year in partnership minimum gain (as determined in accordance with Section 1.704-2(d) of the Treasury Regulations) and in the minimum gain attributable to any partner for nonrecourse debt (as determined under Section 1.704-2(i)(3) of the Treasury Regulations); and

(ii) debit to such Capital Account the items described in Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6) of the Treasury Regulations.

5

This definition of Deficit Capital Account is intended to comply with the provisions of Treasury Regulation Sections 1.704-1(b)(2)(ii)(d) and 1.704-2, and will be interpreted consistently with those provisions.

(h) "Distributable Cash" shall mean all cash, revenues and funds received by the Company from Company operations, less the sum of the following to the extent paid or set aside by the Company: (i) all principal and interest payments on indebtedness of the Company and all other sums paid to lenders; (ii) all cash expenditures incurred in the normal operation of the Company's business; (iii) such Reserves as the Managers deem reasonably necessary for the proper operation of the Company's business.

(i) "Economic Interest" shall mean a Member's or Economic Interest Owner's share of one or more of the Company's Net Profits, Net Losses and distributions of the Company's assets pursuant to this Operating Agreement and the Act, but shall not include any right to participate in the management or affairs of the Company, including, the right to vote on, consent to or otherwise participate in any decision of the Members or Managers.

(j) "Economic Interest Owner" shall mean the owner of an Economic Interest who is not a Member.

(k) "Entity" shall mean any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, cooperative, association, foreign trust or foreign business organization.

(l) "Gifting Member" shall mean any Member or Economic Interest Owner who gifts, bequeaths or otherwise transfers for no consideration (by operation of law or otherwise, except with respect to bankruptcy) all or any part of its Membership Interest or Economic Interest.

(m) "Majority Interest" shall mean one or more Interests of Members which in the aggregate exceed 50% of all Percentage Interests.

(n) "Manager" shall mean one or more managers. References to the Manager in the singular or as him, her, it, itself, or other like references shall also, where the context so requires, be deemed to include the plural or the masculine or feminine reference, as the case may be.

(o) "Member" shall mean each of the parties who execute a counterpart of this Operating Agreement as a Member and each of the parties who may hereafter become Members. To the extent a Manager has purchased a Membership Interest in the Company, he will have all the rights of a Member with respect to such Membership Interest, and the term "Member" as used herein shall include a Manager to the extent he has purchased such Membership Interest in the Company. If a Person is a Member immediately prior to the purchase or other acquisition by such Person of an Economic Interest, such Person shall have all the rights of a Member with respect to such purchased or otherwise acquired Membership Interest or Economic Interest, as the case may be.

(p) "Membership Interest" shall mean a Member's entire interest in the Company including such Member's Economic Interest and the right to participate in the management of the business and affairs of the Company, including the right to vote on, consent to, or otherwise participate in any decision or action of or by the Members granted pursuant to this Operating Agreement and the Act.

(q) "Net Profits" and "Net Losses" shall mean the income, gain, loss, deductions and credits of the Company in the aggregate or separately stated, as appropriate, determined in accordance with generally accepted accounting principles employed under the cash method of accounting at the close of each fiscal year on the Company's tax return filed for federal income tax purposes.

(r) "Operating Agreement" shall mean this Operating Agreement as originally executed and as amended from time to time.

(s) "Percentage Interest" shall mean, for any Member, the percentage interest in the Company as set forth on Exhibit A, as may be changed from time to time by the unanimous vote of the members.

(t) "Persons" shall mean any individual or Entity, and the heirs, executors, administrators, legal representatives, successors, and assigns of such "Person" where the context so permits.

(u) "Reserves" shall mean funds set aside or amounts allocated to reserves which shall be maintained in amounts deemed sufficient by the Managers for working capital and to pay taxes, insurance, debt service or other costs or expenses incident to the ownership or operation of the Company's business.

(v) "Selling Member" shall mean any Member or Economic Interest Owner which sells, assigns, pledges, hypothecates or otherwise transfers for consideration all or any portion of its Membership Interest or Economic Interest.

(w) "Transferring Member" shall collectively mean a Selling Member and a Gifting Member.

(x) "Treasury Regulations" shall include proposed, temporary and final regulations promulgated under the Code.

## ARTICLE II

## FORMATION OF COMPANY

2.01 Formation.

Broadway Tiffany, LLC shall be or has been organized as an Illinois Limited Liability Company by executing and delivering Articles of Organization to the Illinois Secretary of State in accordance with and pursuant to the Act.

2.02 Name. The name of the Company is Broadway Tiffany, LLC.

2.03 Principal Place of Business. The principal place of business of the Company within the State of Illinois shall be 1159 E. North Street, Bradley, Illinois. The Company may locate its places of business and registered office at any other place or places as the Managers may deem advisable.

2.04 **Registered Office and Registered Agent.** The Company's initial registered office shall be at the office of its registered agent at 19815 Governors Hwy., Suite 11, Flossmoor, Illinois, and the name of its initial registered agent shall be Michael D. Hughes. The registered office and registered agent may be changed by filing the address of the new registered office and/or the name of the new registered agent with the Illinois Secretary of State pursuant to the Act.

2.05 **Term.** The term of the Company shall be perpetual, unless the Company is earlier dissolved in accordance with either the provisions of this Operating Agreement or the Act.

## ARTICLE III

## BUSINESS OF COMPANY

The business of the Company shall be:

(a) To acquire, invest in, develop, construct, market, sell, lease and manage real estate.

(b) To accomplish any lawful business whatsoever, or which shall at any time appear conducive to or expedient for the protection or benefit of the Company and its assets.

## ARTICLE IV

## NAMES AND ADDRESSES OF MEMBERS

The names and addresses of the Members are as follows:

| NAME | ADDRESS |
|---|---|
| Dennis F. Nardoni | 800 N. Michigan Avenue, #4602<br>Chicago, IL 60611 |
| Tony Faham | 800 N. Michigan Avenue, #3301<br>Chicago, IL 60611 |
| Shawni Moshiri | 800 N. Michigan Avenue, #2203<br>Chicago, IL 60611 |

## ARTICLE V

## RIGHTS AND DUTIES OF MANAGERS

5.01 **Management.** The business and affairs of the Company shall be managed by its Managers. The Managers shall direct, manage and control the business of the Company. Except for situations in which the approval of the Members is expressly required by this Operating Agreement or by nonwaivable provisions of the Act, the Managers shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business. At any time when there is more than one Manager, any one Manager may take any action permitted to be

8

taken by the Managers, unless the approval of more than one of the Managers is expressly required pursuant to this Operating Agreement or the Act.

5.02 **Number, Tenure and Qualifications.** The Company shall initially have one Manager, namely, Dennis F. Nardoni. The number of Managers of the Company shall be fixed from time to time by the affirmative vote of Members holding greater than two-thirds of all Percentage Interests in the Company, but in no instance shall there be less than one Manager. Each Manager shall hold office until his successor shall have been elected and qualified. Managers shall be elected by the affirmative vote of Members holding greater than two-thirds of all Percentage Interests in the Company. Managers need not be Members of the Company.

5.03 **Certain Powers of Managers.** Without limiting the generality of Section 5.01, the Managers shall have power and authority, on behalf of the Company:

(a) To acquire property from any Person as the Managers may determine, whether or not such Person is directly or indirectly affiliated or connected with any Manager or Member;

(b) To borrow money for the Company from banks, other lending institutions, the Managers, Members, or affiliates of the Managers or Members on such terms as the Managers deem appropriate, and in connection therewith, to hypothecate, encumber and grant security interests in the assets of the Company to secure repayment of the borrowed sums. No debt shall be contracted or liability incurred by or on behalf of the Company except by the Managers, or to the extent permitted under the Act, by agents or employees of the Company expressly authorized to contract such debt or incur such liability by the Managers;

(c) To purchase liability and other insurance to protect the Company's property and business;

(d) To hold and own Company real and personal properties in the name of the Company;

(e) To invest Company funds in time deposits, short-term governmental obligations, commercial paper or other investments;

(f) Upon the affirmative vote of the Members holding at least two-thirds of all Percentage Interests, to sell or otherwise dispose of all or substantially all of the assets of the Company as part of a single transaction or plan as long as such disposition is not in violation of or a cause of a default under any other agreement to which the Company may be bound;

(g) To execute on behalf of the Company all instruments and documents, including, without limitation, checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; documents providing for the acquisition, mortgage or disposition of the Company's property; assignments, bills of sale; leases; and any other instruments or documents necessary to the business of the Company;

(h) To employ accountants, legal counsel, managing agents or other experts to perform services for the Company;

(i) To enter into any and all other agreements on behalf of the Company, in such forms as the Managers may approve; and

(j) To do and perform all other acts as may be necessary or appropriate to the conduct of the Company's business.

Unless authorized to do so by this Operating Agreement or by the Managers of the Company, no attorney-in-fact, employee or other agent of the Company shall have any power or authority to bind the Company in any way, to pledge its credit or to render it liable for any purpose. No Member shall have any power or authority to bind the Company unless the Member has been authorized by the Managers to act as an agent of the Company in accordance with the previous sentence.

5.04 **Liability for Certain Acts.** Each Manager shall perform his duties as Manager in good faith, in a manner he reasonably believes to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. A Manager shall not be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member, unless the loss or damage shall have been the result of fraud, deceit, gross negligence, willful misconduct or a wrongful taking by the Manager.

5.05 **Managers Have No Exclusive Duty to Company.** A Manager shall not be required to manage the Company as his sole and exclusive function and he may have other business interests and engage in activities in addition to those relating to the Company. Neither the Company nor any Member shall have any right, by virtue of this Operating Agreement, to share or participate in such other investments or activities of the Manager or to the income or proceeds derived therefrom.

5.06 **Bank Accounts.** The Managers may from time to time open bank accounts in the name of the Company, and the Managers shall be the sole signatory thereon, unless Members owning a Majority Interest determine otherwise.

5.07 **Indemnity of the Managers, Employees and Other Agents.** Provided that Members owning a Majority Interest approve, the Company shall, to the maximum extent permitted under Section 15-10 of the Act, indemnify and make advances for expenses to Managers, its employees, and other agents.

5.08 **Resignation.** Any Manager of the Company may resign at any time by giving written notice to the Members of the Company. The resignation of any Manager shall take effect upon receipt of notice thereof or at such later date specified in such notice; and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. The resignation of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member.

5.09 **Removal.** At a meeting called expressly for that purpose, all or any lesser number of Managers may be removed at any time, with or without cause, by the affirmative vote of Members holding greater than two-thirds of all Percentage Interests. The removal of a Manager who is also a Member shall not affect the Manager's rights as a Member and shall not constitute a withdrawal of a Member.

5.10 **Vacancies.** Any vacancy occurring for any reason in the number of Managers of the Company may be filled by the affirmative vote of Members holding at least two-thirds of all Percentage Interests. Any Manager's position to be filled by reason of an increase in the number of Managers shall be filled by the election at a meeting of Members called for that purpose or by the Members' unanimous written consent. A Manager elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office and shall hold office until the expiration of such term and until his successor shall be elected and qualified or until his earlier death, resignation or removal. A Manager chosen to fill a position resulting from an increase in the

number of Managers shall hold office until his successor shall be elected and qualified, or until his earlier death, resignation or removal.

5.11 **Salaries.** The salaries and other compensation of the managers shall be fixed from time to time by an affirmative vote of Members holding at least a Majority Interest, and no Manager shall be prevented from receiving such salary because he is also a Member of the Company.

## ARTICLE VI

## RIGHTS AND OBLIGATIONS OF MEMBERS

6.01 **Limitation of Liability.** Each Member's liability shall be limited as set forth in this Operating Agreement, the Act and other applicable law.

6.02 **Company Debt Liability.** A Member will not be personally liable for any debts or losses of the Company beyond his respective Capital Contributions and any obligation of the Member under Section 8.01 and 8.02 to make Capital Contributions, except as provided in Section 6.07 or as otherwise required by law.

6.03 **List of Members.** Upon the written request of any Member, the Managers shall provide a list showing the names, addresses and Membership Interests and Economic Interests of all Members.

6.04 **Approval of Sale of All Assets.** The Members shall have the right, by the affirmative vote of Members holding at least two-thirds of all Percentage Interests, to approve the sale, exchange or other disposition of all, or substantially all, of the Company's assets which is to occur as part of a single transaction or plan.

6.05 **Company Books.** The Managers shall maintain and preserve, during the term of the Company, the accounts, books, and other relevant Company documents described in Section 9.09. Upon reasonable written request, each Member and Economic Interest Owner shall have the right, at a time during ordinary business hours, as reasonably determined by the Manager, to inspect and copy, at the requesting Member's or Economic Interest Owner's expense, the Company documents identified in Section 1-40 of the Act, and such other documents which the manager, in his discretion, deems appropriate.

6.06 **Priority and Return of Capital.** Except as may be expressly provided in Article IX, no Member or Economic Interest Owner shall have priority over any other Member or Economic Interest Owner, either as to the return of Capital Contributions or as to Net Profits, Net Losses or distributions; provided that this Section shall not apply to loans which a Member has made to the Company.

6.07 **Liability of a Member to the Company.** A Member who receives a distribution or the return in whole or in part of its contribution is liable to the Company only to the extent provided by the Act.

## ARTICLE VII

## MEETINGS OF MEMBERS

**7.01 Meetings.** Meetings of the Members, for any Purpose Or Purposes, may be called by any Manager or by any Member or Members holding at least one-third of the Percentage Interests.

**7.02 Place of Meetings.** The Members may designate any place, either within or outside the State of Illinois, as the place of meeting for any meeting of the Members. If no designation is made, or if a special meeting be otherwise called, the place of meeting shall be the principal place of business of the Company in the State of Illinois.

**7.03 Notice of Meetings.** Except as provided in Section 7.04, written notice stating the place, day and hour of the meeting and the purpose or purposes for which the meeting is called shall be delivered not less than five nor more than thirty days before the date of the meeting, either personally or by mail, by or at the direction of the Managers or Member or Members calling the meeting, to each Member entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered two calendar days after being deposited in the United States mail, addressed to the Member at its address as it appears on the books of the Company, with postage thereon prepaid.

**7.04 Meeting of All Members.** If all of the Members shall meet at any time and place, either within or outside of the State of Illinois, and consent to the holding of a meeting at such time and place, such meeting shall be valid without call or notice, and at such meeting lawful action may be taken.

**7.05 Record Date.** For the purpose of determining Members entitled to notice of or to vote at any meeting of Members or any adjournment thereof, or Members entitled to receive payment of any distribution, or in order to make a determination of Members for any other purpose, the date on which notice of the meeting is mailed or the date on which the resolution declaring such distribution is adopted, as the case may be, shall be the record date for such determination of Members. When a determination of Members entitled to vote at any meeting of Members has been made as provided in this Section, such determination shall apply to any adjournment thereof.

**7.06 Quorum.** Members holding at least a Majority Interest, represented in person or by proxy, shall constitute a quorum at any meeting of Members. In the absence of a quorum at any such meeting, a majority of the Percentage Interests so represented may adjourn the meeting from time to time for a period not to exceed sixty days without further notice. However, if the adjournment is for more than sixty days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each Member of record entitled to vote at the meeting. At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally noticed. The Members present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal during such meeting of that number of Percentage Interests whose absence would cause less than a quorum.

**7.07 Manner of Acting.** If a quorum is present, the affirmative vote of Members holding a Majority Interest shall be the act of the Members, unless the vote of a greater or lesser proportion or number is otherwise required by the Act, by the Articles of Organization, or by the Operating Agreement. Unless otherwise expressly provided herein or required under applicable

law, only Members who have a Membership Interest may vote or consent upon any matter and their vote or consent, as the case may be, shall be counted in the determination of whether the matter was approved by the Members.

7.08 **Proxies.** At all meetings of Members, a Member may vote in person or by proxy executed in writing by the Member or by a duly authorized attorney-in-fact. Such proxy shall be filed with the Managers of the Company before or at the time of the meeting. No proxy shall be valid after eleven months from the date of its execution, unless otherwise provided in the proxy.

7.09 **Action by Members Without a Meeting.** Action required or permitted to be taken at a meeting of Members may be taken without a meeting if the action is evidenced by one or more written consents describing the action taken, signed by each Member entitled to vote and delivered to the Managers of the Company for inclusion in the minutes or for filing with the Company records. Action taken under this Section is effective when all Members entitled to vote have signed the consent, unless the consent specifies a different effective date.

7.10 **Waiver of Notice.** When any notice is required to be given to any Member, a waiver thereof in writing signed by the person entitled to such notice, whether before, at, or after the time stated therein, shall be equivalent to the giving of such notice.

## ARTICLE VIII

## CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS

8.01 **Members' Capital Contributions.** Each Member shall contribute such amount as is set forth in Exhibit A hereto as his share of the Initial Capital Contribution.

8.02 **Additional Contributions.** A Member shall be required to make such additional Capital Contributions as shall be determined by Members owning a Majority Interest from time to time to be reasonably necessary to meet the expenses and obligations of the Company. After the making of any such determination, the Managers shall give written notice to each Member of the amount of required additional contribution, and each Member shall deliver to the Company its pro rata share thereof (in proportion to the respective Percentage Interest of the Member on the date such notice is given) no later than thirty days following the date such notice is given. None of the terms, covenants, obligations or rights contained in this Section 8.02 is or shall be deemed to be for the benefit of any person or entity other than the Members and the Company, and no such third person shall under any circumstances have any right to compel any actions or payments by the Managers and/or the Members.

8.03 **Capital Accounts.**

(a) A separate Capital Account will be maintained for each Member. Each Member's Capital Account will be increased by (1) the amount of money contributed by such Member to the Company; (2) the fair market value of property contributed by such Member to the Company (net of liabilities secured by such contributed property that the Company is considered to assume or take subject to under Code Section 752); (3) allocations to such Member of Net Profits and Net Losses; and (4) allocations to such Member of income described in Code Section 705(a)(1)(B). Each Member's Capital Account will be decreased by (1) the amount of money distributed to such Member by the Company; (2) the fair market value of property distributed to such Member by the Company (net of liabilities secured by such distributed property that such Member is considered to assume or take subject to under Code Section 752); (3) allocations to such Member of expenditures described in Code Section 705(a)(2)(B); and (4) allocations to the